Pearlman Appeal.

Argued June 1, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Joseph S. Lord, III,* with him *Meyer A. Bushman,* for appellant.

*Marvin Comisky,* for guardian of the ward, appellee.

OPINION PER CURIAM, June 29, 1960:

This is an appeal from the order of the lower Court dismissing appellant's amended petition to remove the guardian of his estate on the ground that he had become competent.

The Incompetents' Estates Act of 1955, re-enacted and amended July 11, 1957,* provides: "Section 321 . . . The court shall have exclusive power to remove a guardian when . . . (6) the incompetent of whose estate he is guardian is adjudged competent." "Section 323. Adjudication of competency. The court, upon petition and after such notice as it shall direct, may find, after a hearing at which good cause is shown, that a

---

* P. L. 794, 50 PS §§3101-3801 (Supp. 1958). The short title of this Act is The Incompetents' Estates Act of 1955. Even stranger, The Incompetents' Estates Act of 1955 was enacted February 28, 1956, P. L. 1154. The 1957 Act re-enacted the so-called Act of 1955 and amended it.

person previously adjudged incompetent has become competent."

The Incompetents' Estates Act of 1955 has recently been ably analyzed by Mr. Justice BENJAMIN R. JONES in *Myers Estate*, 395 Pa. 459, 150 A. 2d 525, and further analysis is unnecessary.

We find no clear abuse of discretion nor error of law in the order, which is affirmed on the opinion of Judge SPORKIN.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO filed June 30, 1960:

One sure way not to make a mistake is not to do anything. Thus, the Court of Common Pleas No. 2 of Philadelphia County handling the present case can remain safely within its ivory tower of non-criticism by refusing to touch the status quo.

Justin Pearlman was declared incompetent on September 19, 1945, and the Tradesmens Bank and Trust Company was appointed guardian of his estate. In June, 1959, a petition was filed asking for removal of the guardian on the basis that Pearlman had recovered from his mental illness. Hearings were held on the petition, and the court refused to discharge the guardian principally because on a previous occasion Pearlman had been declared recovered and then suffered a relapse. But there is no reason why he should be shackled to a guardian during the time that he is entirely competent to handle his affairs, only because of the remote possibility of a relapse. Joshua Logan, one of the geniuses of the Broadway stage and of Hollywood in dramatic production has had relapses of a mental condition but upon recovery he goes back to his work and his art.

Two physicians, Dr. Herbert Freed and Dr. William R. O'Brien, both eminently qualified in their fields of psychiatry and neurology, testified at the hearings and they both declared that in their opinion Pearlman would not become the victim of designing persons. The petitioner himself took the witness stand and accredited himself excellently, testifying with considerable minuteness on financial affairs. He summed up his situation in the following manner: "I feel that I am able to handle my own funds, and it is also a considerable expense to have a guardian needlessly manage the funds I have. They get a percentage of the principal and a percentage of the income and it is not necessary any longer, and I don't feel that I would become the victim of designing persons."

The testimony of the petitioner and of the two physicians was uncontradicted. The court below may have felt that if it was erring, it was doing so on the safe side, but a court must have the formidableness to meet an issue and decide it according to the evidence. It would appear that the court was not being guided by the evidence but by fear of a possibility which was not justified by what was said in court. The Incompetents' Estates Act of June 28, 1951, P. L. 612, §§321 and 323, provides the machinery for the removal of a guardian when the "incompetent of whose estate he is guardian has become competent."

This machinery turned in vain in the court below. I am in accord with what Chief Justice MAXEY said in *Denner v. Beyer,* 352 Pa. 386, 397 : "It is a serious thing to deprive any person of the control of their own property or of their right to dispose of it by will. This right will be judicially taken away from a person only after preponderating proof of his lack of mental capacity to manage his own business affairs. There is no such proof in this record."

354

There was no such proof in the record of this case either.

Mr. Justice COHEN joins in this dissent.